UNITED STATES of America, Appellee,

v.

**Hector ACEVEDO–RAMOS, Defendant, Appellant.**

No. 85–1470.

United States Court of Appeals, First Circuit.

Heard Oct. 6, 1987.

Decided March 11, 1988.

William M. Kunstler, New York City, with whom Ronald L. Kuby and Luis F.

Abreu–Elias, Hato Rey, P.R., were on brief, for appellant.

H. Manuel Hernandez, Asst. U.S. Atty., Crim. Div., with whom Daniel F. Lopez–Romo, U.S. Atty., Hato Rey, P.R., was on brief, for appellee.

Before COFFIN, Circuit Judge, BROWN,* Senior Circuit Judge, and TORRUELLA, Circuit Judge.

JOHN R. BROWN, Circuit Judge.

Hector Acevedo–Ramos (Acevedo) appeals his convictions under 18 U.S.C. § 1951 for the 1981 diamond robbery of Taillex Corporation and for conspiracy to violate § 1951.[1] On appeal, Acevedo raises four issues: whether (i) the District Court abused its discretion by permitting a videotaped deposition to be taken and used at trial, (ii) the District Court committed error by ordering the courtroom in which the videotaped deposition was taken cleared of press and spectators, (iii) prosecutorial misconduct in the form of personal attacks on defense counsel denied Acevedo due process of law, (iv) testimony regarding other crimes committed by Acevedo was grounds for a mistrial. We answer all these questions in the negative, and affirm the convictions.

### A Confederacy of Criminals

Hector Acevedo–Ramos, a San Juan, Puerto Rico jeweler, became involved in a criminal enterprise involving former members of the Puerto Rican police. Acevedo was indicted with five others,[2] but stood trial alone after the others pleaded guilty. Three members of the group, Colon, Aldea, and Derieux, testified against Acevedo at trial. The three witnesses were part of a criminal enterprise which committed dozens of robberies, kidnappings and murders over a ten year period. All three admitted to participation in an extensive string of crimes, but were permitted to plead guilty to much lesser charges in satisfaction for the many crimes, in exchange for their testimony against Acevedo.

Acevedo's involvement stemmed from his participation in a conspiracy to rob the Taillex Corporation. Derieux, the ringleader of the group, testified that the robbery was Acevedo's idea. Derieux further testified that he and Acevedo met prior to the robbery to discuss the robbery and to survey plans of the Taillex building.

Prior to trial, the government had agreed that evidence and testimony about the previous, and unrelated, criminal activities of Acevedo would not be elicited from witnesses. The government witnesses were instructed to avoid mentioning any such other criminal activities. Despite these precautions, on direct examination, Derieux testified that Acevedo was selected to purchase the diamonds because he had purchased stolen property after previous robberies. The trial judge struck that testimony with an instruction to the jury to disregard any testimony regarding other crimes. Later, on cross-examination, in an effort to impeach Derieux, the defense purposefully questioned Derieux regarding previous sales of stolen property to Acevedo.

One of the conspirators, Colon, began cooperating with the government after his indictment and was scheduled to testify against Acevedo. Colon was considered to be an extremely important witness since he participated in both the planning, the actual

---

* Of the Fifth Circuit, sitting by designation.

1. 18 U.S.C. § 1951 provides in part:
   (a) Whoever in any way or degree obstructs, delays, or affects commerce with a movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined not more than $10,000 or imprisoned not more than twenty years, or both.

2. The five defendants named in the indictment were Abimael Colon Cruz (Colon), Felix Aldea Navarro (Aldea), Hipolito Crespo Camacho, Antonio Astacio Mangual, and Ismael Tarrido Torres. Jorge Derieux Yournet (Derieux) was an unindicted co-conspirator. The indictment charged these men with conspiracy to obstruct, delay and affect commerce by robbery, and with aiding and abetting each other in obstruction of commerce by robbery, in violation of 18 U.S.C. §§ 1951 and 1952.

robbery of Taillex and in the disposal of the stolen property. Unfortunately for the prosecution, Colon was incarcerated in Worcester County Jail in Massachusetts, awaiting trial for the first degree murder of a Massachusetts state trooper.

The government's efforts to procure Colon for trial in Puerto Rico were ineffective. Writs of habeas corpus ad prosequendum[3] and ad testificandum were issued to the Sheriff of Worcester County, ordering that Colon be released to the United States Marshall's Service for transportation to Puerto Rico. As Colon was under indictment, with trial imminent in the Commonwealth, Massachusetts was understandably reluctant to, and declined to, release Colon from its jurisdiction.

When it became obvious that Massachusetts would not release Colon until his state trial had been completed, the United States Attorney's Office in Puerto Rico served and filed a motion to take the videotaped deposition of Colon pursuant to Federal Rules of Criminal Procedure 15(a). After a hearing, the trial court granted the motion, finding exceptional circumstances in Colon's detention and pending murder trial in Massachusetts. The court deferred until trial the question whether the deposition could be used at trial.

The deposition was taken in a courtroom of the United States District Court for the District of Massachusetts in Boston and presided over by Judge Laffitte, the judge presiding over the trial in Puerto Rico. Acevedo and his lead counsel were both present. The proceedings were videotaped and recorded by an official court reporter. In consideration of the competing concerns of the need for a fair trial for both Colon and Acevedo and the right to a public trial, the court ordered the deposition closed to the public and the press.

At Acevedo's trial, the court, in allowing use of the videotaped deposition, found that the government had made all reasonable efforts to obtain Colon's presence at

trial. As the witness was nonetheless absent and the government unable to procure his presence by process or other reasonable means, the videotaped deposition was admitted into evidence. The testimony of Colon closely followed the testimony of the other conspirators, and did not appear to have added any new evidence against Acevedo. Acevedo was convicted on both counts and sentenced to a thirty-five year term of imprisonment.

The atmosphere during the trial was quite heated, with both defense and prosecution counsel making derogatory remarks about each other. At one point during closing arguments, the principal defense attorney, Mr. Kunstler, referred to the prosecuting attorney as "my friend." The prosecutor vehemently objected to this characterization, and a heated exchange followed. Acevedo claims that another remark made by government counsel during closing argument constituted an accusation that defense counsel destroyed certain evidence which had been given to the defense. The final incident objected to by Acevedo also came during closing argument. The defense had previously attempted to introduce into evidence a chart which contained some objectionable information. In order to save the chart, the objectionable portions were hastily covered. Acevedo's counsel in his closing argument attacked the government's case, arguing that certain things were done by the FBI at the last minute. In rebuttal, the government lawyer pointed to the hastily doctored chart as an example of last minute work.

### Videotape—Worth a Thousand Words?

Acevedo objects to the use of the videotaped deposition on the grounds that the deponent, Colon, was not unavailable. Although not strictly available, the defense argues that his actual unavailability resulted from the government's conspiracy to keep him in Massachusetts so that he

---

**3.** The government initially sought a writ ad prosequendum, seeking Colon's transfer not for testimony but for prosecution for the Taillex robbery. Once Colon pleaded guilty to the Taillex charges, the writ ad prosequendum was no long-

er appropriate. After some delay, the correct writ, ad testificandum, issued. Given the pendency of the murder trial, the Commonwealth was no more willing to release Colon for testimony than it was for prosecution.

would not be available to testify in person at trial. F.R.Crim.P. 15(a) permits the use of a deposition at trial if the witness is unavailable as defined in Rule 804(a) of the Federal Rules of Evidence. *U.S. v. Keithan,* 751 F.2d 9 (1st Cir.1984). Unavailability includes those circumstances where a witness is absent from trial and the proponent of his testimony has been unable to procure attendance by process or other reasonable means.

■ It is settled law in this circuit that the decision whether to grant or deny a motion to take the deposition of a proposed witness for use at a criminal trial is committed to the sound discretion of the District Court. *Keithan, supra; U.S. v. Mann,* 590 F.2d 361, 365 (1st Cir.1978). Under the circumstances of this case, the District Court did not abuse its discretion in allowing the deposition to be taken and subsequently used at trial.[4]

At all relevant times during the pretrial preparation of this case, Colon was incarcerated in Massachusetts. He was being held by Massachusetts state authorities, awaiting trial on state charges of murdering a Massachusetts state trooper, a matter of expressed great concern to the Commonwealth. At the time the deposition was taken, Colon's murder trial was scheduled for the same week as Acevedo's robbery trial. Writs of habeas corpus ad prosequendum and ad testificandum were issued by the District Court of Puerto Rico, but to no avail.

Serious problems of comity and the traditional policy of federal courts not unduly interfering with state court proceedings led the District Court to refrain from calling into play all available federal power to procure the attendance of this witness. The government made a reasonable, good faith effort to obtain the presence of Colon at Acevedo's trial. When it became apparent that Massachusetts would not release Colon while the murder trial was pending, the District Court could correctly permit the

taking and using of the videotaped deposition at trial.

## *Public v. Fair Trial*

■ Acevedo next argues that the clearing of the courtroom for the deposition of Colon violated Acevedo's right to a public trial. This argument is without merit. The District Court was forced to balance the need for an impartial trial for both Colon and Acevedo against the right to take a deposition in a public place hundreds of miles from the site of the actual trial. The fact that this deposition occurred only a few days before both trials were to begin prompted Judge Laffitte to order the courtroom cleared to prevent news reports of the deposition testimony reaching prospective jurors prior to their selection. The testimony of Colon was aired in public, via the videotape, at trial. If, and the if is a tiny, tiny one, any error occurred, it was harmless.

## *A Personality Clash? Or Reversible Error?*

Acevedo next argues that personal attacks made by the prosecution on defense counsel denied Acevedo due process of law. This argument is likewise without merit. "In deciding whether a new trial is required ... we consider the severity of the misconduct, whether it was deliberate or accidental, the context in which it occurred, the likely curative effect of the judge's admonitions and the strength of the evidence against the defendant." *U.S. v. Glantz,* 810 F.2d 316, 320 (1st Cir.1987). "Where a reviewing court can find that the record developed at trial establishes guilt beyond a reasonable doubt, the interest in fairness has been satisfied and the judgment should be affirmed." *Rose v. Clark,* 478 U.S. 570, ——, 106 S.Ct. 3101, 3107, 92 L.Ed.2d 460, 471 (1986); *Delaware v. Van Arsdall,* 475 U.S. 673, 679–81, 106 S.Ct. 1431, 1436, 89 L.Ed.2d 674, 683–85 (1986).

---

**4.** We wish to emphasize, nonetheless, that this discretion is limited by the "high good faith" standard of *Mann,* and mere "perfunctory efforts" by the prosecution will not make the grade. The government's response here did make the grade. We are convinced by the compelling, detailed explanation of the Assistant United States Attorney that all possible efforts were made to procure the attendance of Colon at trial.

In light of the extensive evidence presented against Acevedo, there is no likelihood that these personal attacks could have had any effect whatsoever on the outcome of the case. The "not my friend" outburst was obviously spontaneous, and cannot be characterized as deliberate, even assuming that it was misconduct. We cannot say that any of the incidents, standing alone or cumulated, approach the level of misconduct requiring a new trial.

### Too Many Crimes Spoil the Defense

Finally, Acevedo asserts that Derieux' testimony regarding other crimes committed by Acevedo was grounds for a mistrial. We disagree. The testimony on direct examination was stricken and a cautionary instruction was given to the jury. The court further admonished Derieux not to mention any other crimes committed by Acevedo.

On cross examination, Acevedo's lawyer began to elicit information identical to that objected to on direct. The trial judge warned him that once the door was opened, the government would be free to step through. Acevedo's counsel acknowledged the warning, but continued in the same vein, stating his need to "take some chances [in order to] establish a motive for this man [Derieux] to lie."[5] In subsequent defense questioning, Derieux testified to Acevedo's involvement in other criminal activity.[6] Counsel at no time argued that this need to "take some chances" was created by Derieux's "other crimes" testimony on direct; for all we can tell this was counsel's cross-examination strategy all along.

The harmful testimony obtained by the defense attorney remained in the record, with no cautionary instruction sought or given. Acevedo cannot now complain that the inadvertent statement made during direct examination was error justifying a mistrial when his own attorney compounded the problem on cross.

*Conclusion*

The jury verdict is amply supported and no error occurred or was harmful.

AFFIRMED.

5. Joint Appendix, Vol. I, p. 359.

6. *Id.,* p. 406.