[No. 8755-7-III.   Division Three.   May 26, 1988.]

THE STATE OF WASHINGTON, *Respondent*, v. MANUEL JOSE RIVERA, *Appellant.*

*Richard Mathieu,* for appellant (appointed counsel for appeal).

*Jeffrey C. Sullivan, Prosecuting Attorney,* and *Robert Hackett, Deputy,* for respondent.

GREEN, J.—Mr. Rivera appeals his conviction of second degree burglary. He contends the court erred in admitting an out–of–court statement of the State's primary witness. We agree and reverse.

At approximately 8:30 p.m., March 9, 1987, when the Toppenish police were making their security checks, they found several VCR's, car stereos and other electronic items next to the railroad tracks not far from the Western Auto Store. The police discovered several sets of footprints behind the Western Auto Store and found the back doors had been kicked in. The police then searched the boxcars near the Linda Rosa Restaurant, where stolen property had been recovered from a previous burglary, and found guns, ammunition and a coffee maker. The seized items were subsequently identified as having been stolen from the Western Auto Store.

The following day, Ms. Jeffrey, a Toppenish resident, brought a radio cassette player to the police which had been given to her daughter, Leah Jo Pearrow, the day before and which Ms. Jeffrey believed to be stolen. Ms. Jeffrey then brought her daughter to talk with the police. After Ms. Pearrow was advised of her *Miranda* rights, she told the police that between 8:30 and 9 p.m. the night before, Mr. Rivera and several other men came into the restaurant where she was working and told her they had "just ripped off" the Western Auto Store and needed her help to "stash it." They told her they had temporarily placed the stolen merchandise in one of the boxcars near the Linda Rosa Restaurant. Ms. Pearrow then boxed the stolen property, including radio cassette players, car stereos and some guns, and took them home with her after work that evening. The next morning she brought the property to work where Mr. Rivera and two other men picked it up. Mr. Rivera then gave her a radio cassette player which she

accepted although she suspected it was stolen. It was subsequently identified as one of the items stolen in the burglary.

Mr. Rivera was charged with second degree burglary. He pleaded not guilty. Ms. Pearrow was subpoenaed by the State to testify, but failed to appear on the day of trial. Her tape–recorded and transcribed statement was admitted over objection of Mr. Rivera. This was the only evidence presented connecting Mr. Rivera with the burglary. He was convicted and appeals.

Mr. Rivera contends it was error for the court to admit Ms. Pearrow's out–of–court statement because the State failed to establish her unavailability and the circumstances corroborating the statement's trustworthiness. We agree.

The court admitted the statement of Ms. Pearrow on the basis her failure to comply with the subpoena made her unavailable for purposes of ER 804(a)(5)[1] and the statement was against her penal interest, ER 804(b)(3).[2] We do not address whether the statement itself was sufficiently trustworthy because we find the State failed to establish Ms. Pearrow's unavailability.

In addition to the requirements of ER 804, the admissibility of a hearsay statement in a criminal case is subject to the defendant's Sixth Amendment right of confrontation. *Barber v. Page,* 390 U.S. 719, 20 L. Ed. 2d 255, 88 S. Ct. 1318 (1968); *State v. Parris,* 98 Wn.2d 140, 654 P.2d 77

---

[1]ER 804(a)(5) describes an unavailable witness as one who "[i]s absent from the hearing and the proponent of his statement has been unable to procure his attendance . . . by process of other reasonable means."

[2]ER 804(b)(3) permits admission of a statement of an unavailable witness if "[the] statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability, or to render invalid a claim by him against another, that a reasonable man in his position would not have made the statement unless he believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement."

(1982); Comment, ER 804. The purpose of the confrontation clause is to advance the accuracy of the truth–determining process by assuring the trier of fact has a satisfactory basis for evaluating the truth of the prior statement. *Dutton v. Evans,* 400 U.S. 74, 89, 27 L. Ed. 2d 213, 91 S. Ct. 210 (1970). Thus, even though a hearsay statement may be admissible under ER 804, it nevertheless may not survive the more stringent constitutional standard.

When the hearsay declarant is not present for cross examination, the confrontation clause usually requires a showing that he is unavailable. *Ohio v. Roberts,* 448 U.S. 56, 75, 65 L. Ed. 2d 597, 100 S. Ct. 2531, 2543 (1980); *State v. Goddard,* 38 Wn. App. 509, 514, 685 P.2d 674 (1984); 5A K. Tegland, Wash. Prac., *Evidence* § 393 (2d ed. 1982). Our courts have interpreted this to mean the declarant must be legally unavailable. *State v. Dictado,* 102 Wn.2d 277, 287, 687 P.2d 172 (1984). The United States Supreme Court recently rejected any rule which would be an absolute bar to the admission of hearsay evidence based upon the unavailability of the declarant, *United States v. Inadi,* 475 U.S. 387, 89 L. Ed. 2d 390, 106 S. Ct. 1121, 1125–26 (1986), but this State has reserved decision on the question of whether unavailability should be an absolute bar. *State v. Hieb,* 107 Wn.2d 97, 107, 727 P.2d 239 (1986).

Nevertheless, the confrontation clause would still require, at a minimum, that the prosecution make a good faith effort to obtain a witness' presence at trial. *See Barber v. Page,* 390 U.S. at 724–25; *State v. Sweeney,* 45 Wn. App. 81, 85, 723 P.2d 551 (1986). Here, the prosecution failed to meet its obligation of good faith. Good faith has been interpreted to mean

> untiring efforts in good earnest. There must be evidence of a substantial character to support the conclusion of due diligence. [What is required is] a thorough, painstaking and systematic attempt to locate the witnesses.

*Fresneda v. State,* 483 P.2d 1011, 1017 (Alaska 1971) (quoting *People v. Redston,* 139 Cal. App. 2d 485, 293 P.2d

880, 886 (1956)). Where as here the conviction rests entirely on the out-of-court statement, the right of confrontation is critical. *State v. Smith,* 85 Wn.2d 840, 851, 540 P.2d 424 (1975). In these circumstances, the unavailability of the declarant must be certain. *State v. Ryan,* 103 Wn.2d 165, 171, 691 P.2d 197 (1984); *State v. Smith, supra.*

It has been held "good faith" is satisfied where a witness fails to appear pursuant to a subpoena and a bench warrant is issued for his arrest, coupled with the state's attempts to locate the witness by using the national crime computer, contacting the witness' bondsman, and other relatives. *Gallagher v. State,* 466 N.E.2d 1382 (Ind. Ct. App. 1984). It is also satisfied where the prosecution makes a reasonable effort to produce a missing witness by seeking her at the address given in the subpoena, searching for her in another state where her relatives and friends reside, placing an all-points bulletin for her vehicle and having a private investigator watch her parents' home. *State v. Corrigan,* 10 Kan. App. 2d 55, 691 P.2d 1311 (1984). Absence from the jurisdiction alone has been held not to satisfy this requirement. *Barber v. Page,* 390 U.S. at 723. If it becomes apparent that a witness is no longer cooperating, resort to statutory mechanisms to compel attendance must be utilized. *State v. Sweeney, supra.* Where the witness fails to honor a subpoena, but the state has some indication as to the whereabouts of the witness, the state should request a continuance to preserve the defendant's right of confrontation. *Bentley v. State,* 706 P.2d 1193, 1197 (Alaska Ct. App. 1985).

Here, the prosecution's only effort in obtaining Ms. Pearrow's attendance was the issuance of a subpoena. Her failure to appear on the day of trial, in and of itself, is not sufficient to sustain the prosecution's obligation to exercise good faith. In fact, the record reflects otherwise. A Toppenish police officer testified Ms. Pearrow had been living with her mother, Ms. Jeffrey, in Toppenish, but the police did not inquire whether Ms. Jeffrey knew where her daughter might be located. The police also knew Ms. Pearrow had

called the police station from Ellensburg a week before trial in an attempt to reach her mother. Consequently, they had some idea as to her whereabouts. Additionally, the trial was continued for 3 days, during which the court reserved its ruling on the admissibility of Ms. Pearrow's statement. The continuance gave the State an opportunity to locate Ms. Pearrow, but the record does not reflect any attempt to do so. The State cannot claim good faith solely on the issuance of the subpoena, particularly where the State concedes Ms. Pearrow's statement is the only evidence connecting Mr. Rivera with the burglary. Having failed to prove Ms. Pearrow's unavailability with certainty, the admission of her statement was error.

An error in admission of evidence requires reversal if it materially affects the outcome of the trial. *State v. Sweeney, supra* at 86; *State v. Sanchez,* 42 Wn. App. 225, 231, 711 P.2d 1029 (1985), *review denied,* 105 Wn.2d 1008 (1986). Here, the evidence was crucial to the conviction, and consequently it was not harmless beyond a reasonable doubt. *State v. Savage,* 94 Wn.2d 569, 618 P.2d 82 (1980); *State v. Rivas,* 49 Wn. App. 677, 682, 746 P.2d 312 (1987).

Reversed.

THOMPSON, A.C.J., and MUNSON, J., concur.