[No. 23628–8–I.   Division One.   May 20, 1991.]

THE STATE OF WASHINGTON, *Respondent,* v. BILL RONALD HOBSON, *Appellant.*

*Joshua Weinstein* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Jeanette Dalton, Deputy,* for respondent.

WEBSTER, A.C.J.—Bill R. Hobson appeals his conviction of second degree theft. He contends that the trial court erred in admitting the victim's videotaped deposition because the State failed to show that the victim was unavailable to testify. He also claims that admitting the

videotaped deposition violated his Sixth Amendment right to confront and cross–examine a state witness.

FACTS

A couple of weeks prior to the theft in question, Hobson and his friend, Hrvatin, moved in with DiBenedetto, their employer. DiBenedetto observed them placing dirty "coppery nuggets" in a solution and using an "electrical gadget", which turned the nuggets a gold color. At first, they told DiBenedetto they were "cleaning" gold nuggets using an electroplate process. Later, they told him that the copper nuggets were not really gold.

On August 27, 1987, Hobson and his friend, Hrvatin, went to the Lucky Loans Pawn Shop, which was owned by Marenakos. Hobson pawned a necklace made from the nuggets, using it as collateral to obtain two $500 loans from Marenakos. Marenakos expressed interest in buying some of the nuggets. Hobson exchanged 150 grams of the nuggets for two generators and two chain saws. He told Marenakos that his friend had mined the gold nuggets in Alaska.

After Hobson and Hrvatin left the pawn shop, Marenakos became nervous and asked a friend to test the nuggets. When his friend tested the nuggets with nitric acid, the acid "boiled up green", revealing the nuggets to be copper. Marenakos contacted the Kent Police Department and reported the incident. A detective who investigated the incident contacted Hobson. Hobson stated to the detective that he did not know the nuggets were fake and apologized for the "inconvenience". He told the detective that he would make good on the loan. Hobson eventually paid back the two $500 loans in full plus interest, and told Marenakos that if the gold nuggets were truly fake, he would take them back to Alaska and try to get his money back.

Hobson and Hrvatin were charged on May 4, 1988, with second degree theft by color and aid of deception, in violation of RCW 9A.56.040(1)(a) and RCW 9A.56.020(1)(b). The matter was originally set for trial on September 15, 1988, with an expiration date of September 29. Marenakos

was personally served with a subpoena to appear for trial on September 15. On September 14, Hobson moved to continue the matter until October 3, to give his attorney time to prepare, thus waiving his right to a speedy trial until October 21. The State did not oppose the motion. Marenakos was again subpoenaed to appear for trial on October 3. Due to several scheduling conflicts, Hobson's trial did not begin until October 21, 1988.

On October 19, the State moved to continue the trial to November 7, 1988, because Marenakos, the victim, had made prior arrangements to go on a prepaid, 3–week hunting trip beginning October 21. The court denied the State's motion. On October 20, the State moved in the alternative to videotape a deposition of Marenakos to preserve his testimony. The court granted the motion, ordering that the deposition take place on or before October 21, 1988. The court at that time did not rule on the admissibility of the deposition. The deposition was held on October 21 and the defendant, codefendant, and their respective attorneys were present. Hobson's attorney cross–examined Marenakos.

The trial began later that day, and the State moved to admit the videotaped deposition. The defense counsel objected, arguing that the State did not take reasonable steps to secure Marenakos's presence for trial and that he was not informed of Marenakos's vacation plans until approximately 1 week before the deposition. The State represented that Marenakos was never released from his subpoena, and that he had indicated that he would not forgo his trip to testify at Hobson's trial, although he agreed to postpone his trip by 1 day in order to have his deposition taken. The State did not obtain a material witness warrant or request the court to order Marenakos to remain. The court granted the State's motion to admit the videotaped deposition. Hobson was convicted as charged.

DISCUSSION

In *Ohio v. Roberts*, 448 U.S. 56, 65 L. Ed. 2d 597, 100 S. Ct. 2531 (1980), the United States Supreme Court

"'announced that confrontation clause analysis should proceed case–by–case under a two–track approach that tests the necessity and reliability" of the hearsay testimony offered against the defendant. *United States v. McClintock,* 748 F.2d. 1278, 1291 (9th Cir. 1984) (quoting *United States v. Perez,* 658 F.2d 654, 660 (9th Cir. 1981) (citing *Roberts,* 448 U.S. at 65–66)). We first consider the "reliability" of the hearsay testimony offered against Hobson. The "Confrontation Clause provides two types of protections for a criminal defendant: the right physically to face those who testify against him, and the right to conduct cross–examination." *Coy v. Iowa,* 487 U.S. 1012, 1017, 101 L. Ed. 2d 857, 108 S. Ct. 2798 (1988) (quoting *Pennsylvania v. Ritchie,* 480 U.S. 39, 51, 94 L. Ed. 2d 40, 107 S. Ct. 989 (1987)). The purpose of the guaranty is to provide

a personal examination and cross–examination of the witness in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief.

*Mattox v. United States,* 156 U.S. 237, 242–43, 39 L. Ed. 409, 15 S. Ct. 337 (1895). In the instant case, Marenakos testified under oath, Hobson was present, and his attorney cross–examined Marenakos. Moreover, the jury had the opportunity to view Marenakos's demeanor and manner in which he testified against Hobson in Hobson's presence. The only difference between admitting Marenakos's deposition and having him testify in person is that Marenakos did not give his testimony in the presence of the jury. Although it would have been preferable to have Marenakos testify in person, we hold that admitting the videotaped deposition satisfied the "central concern" of the confrontation clause, which "is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." *Maryland v. Craig,* ___ U.S. ___, 111 L. Ed. 2d 666, 678, 110 S. Ct. 3157 (1990).

Washington courts have held that former testimony of a state witness is generally immune from subsequent attack as a violation of the defendant's right to confrontation if the defendant had a full opportunity for effective cross examination. *State v. Jenkins*, 53 Wn. App. 228, 235–36, 766 P.2d 499, *review denied*, 112 Wn.2d 1016 (1989); *see Roberts*, 448 U.S. at 56. An exception to this rule might be made in certain circumstances if the defendant or his attorney had no knowledge that the witness would be unavailable for trial. *See Barber v. Page*, 390 U.S. 719, 725, 20 L. Ed. 2d 255, 88 S. Ct. 1318 (1968) (witness's testimony at preliminary hearing held inadmissible). In the instant case, Hobson's attorney stated that he first heard of Marenakos's planned hunting trip on October 13, approximately 7 days before the deposition took place. Thus, Hobson's attorney knew at the time of the deposition that Marenakos might not be present to testify at trial and that the deposition might be his last chance to cross–examine Marenakos.

Another consideration is whether the defendant's attorney had adequate time to prepare for the deposition. In *State v. Hewett*, 86 Wn.2d 487, 545 P.2d 1201 (1976), the court held that introducing the victim's deposition, which was taken with only 4 hours' notice to the defendant, did not violate the defendant's right of confrontation when the State gave the defendant an opportunity to secure further testimony at a later date and the defendant declined. In the instant case, since Marenakos's deposition took place 1 day before trial, Hobson's attorney should have been prepared to cross–examine him. Moreover, Hobson's attorney received a full day's notice of the deposition. We conclude under the facts of this case that admitting the videotaped deposition did not infringe on Hobson's right to confront and cross–examine his accuser.

We next consider the "necessity" of the hearsay testimony offered against Hobson. The necessity requirement is addressed by ER 804(b)(1), which prohibits the admission of former testimony unless the proponent of the former testimony first demonstrates that the declarant is

unavailable to testify. ER 804(a)(5) deems a witness unavailable if the witness is "absent from the hearing and the proponent of his statement has been unable to procure his attendance . . . by process or other reasonable means." When the State is the proponent of the former testimony, the confrontation clause imposes the additional requirement that the prosecution prove it made a "good–faith effort" to obtain the witness's presence at trial. *State v. Rivera*, 51 Wn. App. 556, 559, 754 P.2d 701 (1988) (citing *Barber*, 390 U.S. at 724–25). Washington courts have held, as a general rule, that the prosecution must use all available means to compel the witness's presence at trial. *State v. Sweeney*, 45 Wn. App. 81, 86, 723 P.2d 551 (1986); *Rivera*, at 560; *State v. Goddard*, 38 Wn. App. 509, 513, 685 P.2d 674 (1984). However, "'[t]he lengths to which the prosecution must go to produce a witness . . . is a question of reasonableness.'" *Goddard*, at 512 (quoting *Ohio v. Roberts*, 448 U.S. at 74). Whether the State made a good faith effort is determined according to the particular facts of each case.[1] *State v. Aaron*, 49 Wn. App. 735, 740, 745 P.2d 1316 (1987).

---

[1]In the following cases, the court held that the State did not make a good faith effort to obtain a material witness's presence at trial, and that admitting the witness's deposition therefore was reversible error: *State v. Goddard, supra* (State did not issue subpoena or attempt to induce witness to remain in the state); *State v. Sweeney, supra* (State made no attempt to secure the witness's presence using the procedure for obtaining out–of–state witnesses (RCW 10.55)); *State v. Scott*, 48 Wn. App. 561, 739 P.2d 742 (1987), *aff'd*, 110 Wn.2d 682, 757 P.2d 492 (1988) (after taking witness's deposition, prosecutor released witness's subpoena so he could visit his sick wife in Korea); *State v. Aaron*, 49 Wn. App. 735, 743, 745 P.2d 1316 (1987) (State made no attempt to obtain presence of witness who was temporarily residing in England. Even though the State could not compel the witness's presence, the State should have tried to obtain the voluntary presence of the witness. The court suggested it would have been adequate for the State to show that the witness "was financially unable to return" or "would have declined to return."); *State v. Sanchez*, 42 Wn. App. 225, 711 P.2d 1029 (1985), *review denied*, 105 Wn.2d 1008 (1986) (State did not subpoena witness or accept the defendant's offer to postpone trial to accommodate witness's vacation plans); *State v. Rivera, supra* (State's only effort in obtaining witness's attendance was the issuance of a subpoena; State made no attempt to locate the witness).

In *State v. Sanchez,* 42 Wn. App. 225, 711 P.2d 1029 (1985), *review denied,* 105 Wn.2d 1008 (1986), the defendant's trial was set for March 7, but was continued at the defendant's request until 1 week later. A deputy whom the State intended to call as a witness had planned a vacation to Mexico during the new trial date, so the prosecution moved to preserve the deputy's testimony by videotaped deposition. The trial court granted the motion, even though the defendant offered to continue the trial to a more convenient time. The deposition was admitted over defense counsel's objections. *Sanchez,* at 228. Finding that the State failed to show that it tried to subpoena the witness or use reasonable means to procure her attendance, the Court of Appeals held that the court erred in admitting the videotaped deposition. *Sanchez,* at 231.

The instant case is distinguishable from *Sanchez.* Marenakos was subpoenaed to appear on September 15, 1988, and again on October 3. The State never lifted Marenakos's subpoena. *See State v. Scott,* 48 Wn. App. 561, 566, 739 P.2d 742 (1987), *aff'd,* 110 Wn.2d 682, 757 P.2d 492 (1988). When the State learned that Marenakos would not forfeit his hunting trip in order to testify against Hobson, it moved for a continuance to postpone Hobson's trial until Marenakos returned from his trip. *See Rivera,* at 556. Aside from issuing a material witness warrant, there was little more the prosecution could have done to procure Marenakos's presence at trial.

---

In several other cases, the court held that the State satisfied the good–faith–effort rule, and that the witness's deposition therefore was admissible: *State v. Allen,* 94 Wn.2d 860, 866, 621 P.2d 143 (1980) (witness was under Army orders to be in another state at the time of the trial, and although State made no attempt to seek permission of Army to procure witness for trial, testifying would have caused a setback in the witness's Army career); *State v. Hewett, supra* (witness's ship was scheduled to sail for Japan the day before the trial began and victim was at sea during the trial); *State v. Firven,* 22 Wn. App. 703, 706, 591 P.2d 869 (1979) (witnesses were subpoenaed, but were scheduled to leave on their ship just after the deposition, and the State could not procure them for the trial); *United States v. Acevedo–Ramos,* 842 F.2d 5 (1st Cir. 1988) (state authorities refused to release witness from state prison to testify at the defendant's trial).

338

■ Washington case law is silent on the issue of whether the State must obtain a material witness warrant to hold a witness in custody whenever the State knows such action may be necessary to ensure the witness's presence at trial. Although we do not resolve this issue here, we believe that whether the State is required to secure the presence of a witness by means of a material witness warrant depends in part on the resulting hardship to the witness and the importance of the witness's testimony. *See Rivera,* at 560; *Aaron,* at 744. Although Marenakos's testimony was essential to obtaining Hobson's conviction, Hobson's conviction did not rest entirely on Marenakos's out-of-court testimony. DiBenedetto provided testimony indicating that Hobson and Hrvatin were engaged in electroplating copper nuggets and that they knew the nuggets were not real gold. The detective testified that Hobson told him just the opposite—that he did not know the nuggets were fake. Moreover, Marenakos had already made himself available to testify for 3 weeks and would have had to forfeit his 3-week, prepaid hunting trip had he testified. In addition, both parties were aware of Marenakos's intention a week before trial, and there is no evidence that the prosecution indicated to Marenakos that he need not appear to testify in person.[2] In light of the hardship to Marenakos, the testimony supplied by other witnesses, and our conclusion that Hobson's right to confront and cross-examine Marenakos was not infringed, we hold, based on the particular circumstances of this case, that the State was not required to obtain a material witness warrant to satisfy the good-faith-effort rule.[3]

---

[2]Nevertheless, defense counsel's argument that the record does not indicate whether the State attempted to persuade Marenakos to stay for trial is well taken. In the future, the State should submit affidavits or otherwise create a record as to its communications with an uncooperative witness in order to demonstrate that it acted in good faith and to create a record for review on appeal.

[3]In so holding, we note that the strict requirement of unavailability set forth in *Barber v. Page,* 390 U.S. at 724-25, was announced at a time when videotaping a deposition for use at trial was probably not an economically viable option and

The judgment is affirmed.

COLEMAN and KENNEDY, JJ., concur.

face–to–face confrontation and cross examination of a witness in the presence of the jury could not be as easily simulated.