**FILED**
**JULY 30, 2013**
**In the Office of the Clerk of Court**
**WA State Court of Appeals, Division III**

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 30577-5-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| JEFFERY ALLAN EHART, | ) | |
| | ) | |
| Appellant. | ) | |

KULIK, J. — A jury found Jeffery Ehart guilty of first and second degree child

molestation against his stepdaughters, B.E.(1) and B.E.(2).[1] The jury also found Mr.

Ehart guilty of communication for immoral purposes against B.E.(1). On appeal, Mr.

Ehart contends the admission of videotaped testimony of his sister, T.E., violated Mr.

Ehart's right of confrontation and ER 804. Mr. Ehart also asserts the court abused its

discretion by allowing the testimony of T.E. as part of a common scheme and plan that

included the fondling of B.E.(1) and B.E.(2). Mr. Ehart contends that the trial judge

treated him with unfair prejudice and that he received ineffective assistance of counsel.

---

[1] Both victims, sisters, share the same initials so the parties refer to them as
"B.E.(1)" and "B.E.(2)." B.E.(2) is the older sister.

We examine each of Mr. Ehart's assertions of error and conclude they are without merit.

Therefore, we affirm the convictions.

FACTS

Mr. Ehart was charged with first and second degree child molestation against two of his stepdaughters, B.E.(1) and B.E.(2), and with communication with a minor for immoral purposes against B.E.(1).

The State sought to introduce testimony of two women, A.E. and T.E., who said that they had been sexually abused by Mr. Ehart. The State also sought to introduce Mr. Ehart's prior conviction for possession of child pornography related to T.E.'s allegations. The allegations of A.E. were the subject of prior charges against Mr. Ehart that were dismissed, except for the possession of child pornography charge. The trial court ruled that the conviction for possession of child pornography was inadmissible, but the court allowed the State to present testimony from A.E. and T.E. about the prior incidents, finding that they showed a common scheme or plan. Ultimately, the State elected not to present A.E.'s testimony.

*T.E.'s Videotaped Deposition.* The State moved to take the videotaped deposition of T.E. because she was moving out of state and it would be expensive to bring her back

to testify live at trial. The court had granted numerous continuances of Mr. Ehart's trial at his request.

In her deposition, T.E. testified that Mr. Ehart, who is her brother, began molesting her when she was 15 years old. According to T.E., Mr. Ehart would take her onto his lap and touch her genitals while viewing pornography on a computer. T.E. said that Mr. Ehart would make her look at the images on the computer. T.E. described Mr. Ehart straddling her on a computer chair while touching her genitals. T.E. said that shortly after she turned 16, Mr. Ehart began to take her into his room, remove her clothes, and rape her.

Sometimes Mr. Ehart would masturbate and ask T.E. to play with his penis. T.E. said that sometimes Mr. Ehart would peek in on her, but not touch her, while she was in the shower. T.E. said that on other occasions, Mr. Ehart took her under a bridge near the Yakima River under the pretense of going fishing. T.E. estimates that Mr. Ehart raped her 50 times over the course of several years. She also said that Mr. Ehart bought a dildo and used it on her. T.E. also said that on another occasion, Mr. Ehart purchased bras so that he could wear them in front of her, which made her feel "grossed out." Report of Proceedings (RP) at 357.

According to T.E., Mr. Ehart frequently told her she was beautiful. T.E. never told anyone because Mr. Ehart threatened to hurt their mother, or told her that she would be placed in foster care and would never see her father again. T.E. also testified that Mr. Ehart threatened to leave her at the bridge if she told anyone. He would also put T.E. in a headlock and choke her so that she could not breathe.

*B.E.(2)'s Testimony.* B.E.(2) testified that initially she did not say anything to law enforcement because it sounded like they were saying that her mother had done something wrong. B.E.(1) too initially told police that nothing happened. Later, both girls described instances of sexual behavior directed at them. The two girls are sisters and Mr. Ehart was their stepfather. B.E.(1) was 10 years old when the incidents began; B.E.(2) was 12 years old.

B.E.(2) testified about an occasion when Mr. Ehart told the girls to take a shower. Mr. Ehart then came into the bathroom and began to wash B.E.(1) first on her back and then between her legs. When Mr. Ehart went to wash B.E.(2), she told him to leave, and he did.

B.E.(2) described another incident when Mr. Ehart took her to Yakima to get fish for her birthday. On this trip, Mr. Ehart suggested buying her a thong. B.E.(2) refused, and they left the store. On the way home, Mr. Ehart took her under a bridge, backed her

up to it by putting his hands on both sides of her. B.E.(2) slipped out from under his arm and ran back to the truck. Mr. Ehart got back in the truck, and they went home.

B.E.(2) described incidents when Mr. Ehart took B.E.(1) into his bedroom and locked the door. She heard what sounded like B.E.(1) crying. Other times, B.E.(2) said she saw Mr. Ehart touching B.E.(1) between her legs or on her chest when they were in the bathroom. According to B.E.(2), Mr. Ehart told B.E.(1) that he would love to marry her.

B.E.(2) testified that Mr. Ehart would come up to the girls' bedroom while they were dressing, and he would watch her. Mr. Ehart would squeeze her breasts when nobody was home. When other people were home, Mr. Ehart would put B.E.(2) on his lap and rub her leg. Sometimes when B.E.(2) had friends over, Mr. Ehart would sit next to them, and B.E.(2) would sit between them so he would not hurt them. B.E.(2) said that sometimes when she went into her mother's room where the computer was, Mr. Ehart would be on the computer and would quickly close it so that she did not see what was on it.

B.E.(2) also testified that she never told anyone about Mr. Ehart's actions because she was afraid that she would get into trouble. B.E.(2) was afraid that her mother would be unhappy if she told, and she wanted her mother to be happy. B.E.(2) said that Mr.

Ehart would hurt her when she made him really mad, including one time when he twisted her arm and almost sprained it. Sometimes he would play with a butterfly knife when she made him mad.

*B.E.(1)'s Testimony.* B.E.(1) also testified at trial. She described Mr. Ehart coming into the bathroom to wash her chest when she was 10 years old. She did not mention any touching between her legs. When she was 11 years old, Mr. Ehart asked her about having oral sex. He asked her every other Sunday when they made Avon deliveries. He asked if she wanted him to give her oral sex. Mr. Ehart later asked her if she would marry him, and he asked for regular sex. According to B.E.(1), Mr. Ehart would come up the stairs to watch the girls while they got dressed in their bedroom. B.E.(1) described an incident when Mr. Ehart took her to his bedroom, locked the door, and showed her pictures of bathing suits on the computer for one hour. He also talked about the swim team.

B.E.(1) testified that Mr. Ehart kept a knife behind the seat of his truck. He told her that if she said anything he would kill her family and then her. B.E.(1) also described gifts he would buy for her, like Hannah Montana things.

At trial, Mr. Ehart again objected to the introduction of T.E.'s videotaped deposition. The trial court admitted the videotape and allowed it to be played for the jury.

6

Mr. Ehart testified. He denied having sexual contact with the girls. He also

presented evidence that the girls' mother signed his name to benefit checks on his account

without his permission while he was in jail. Mr. Ehart claims that once the checks

stopped coming, the mother stopped visiting him in jail with the girls, and the allegations

of abuse followed.

The jury convicted Mr. Ehart on three counts. He was sentenced to a term of 175

months to life. He appeals.

## ANALYSIS

*Admission of the Videotaped Deposition.* The Sixth Amendment provides that

"[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with

the witnesses against him." U.S. CONST. amend. VI. The primary right of the

confrontation clause is the right to effect cross-examination of the adverse witness. The

standard of review on a confrontation clause challenge is de novo. *State v. Mason*, 160

Wn.2d 910, 922, 162 P.3d 396 (2007).

"Testimonial statements of witnesses absent from trial [are admissible] only where

the declarant is unavailable, and only where the defendant has had a prior opportunity to

cross-examine." *Crawford v. Washington*, 541 U.S. 36, 59, 124 S. Ct. 1354, 158 L. Ed.

2d 177 (2004).

ER 804(a)(5) requires that the proponent of a hearsay statement must show an inability to procure the declarant's attendance "by process or other reasonable means." Also, ER 804(b)(1) requires that prior testimony of an unavailable witness is admissible only if the party against whom it is offered "had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination."

Where former testimony fails to satisfy either the confrontation clause or ER 804, it is inadmissible. *State v. DeSantiago*, 149 Wn.2d 402, 411, 68 P.3d 1065 (2003). In *DeSantiago*, the court found that the prosecutor used reasonable means to locate witnesses to secure voluntary attendance of witnesses who could not be located because they apparently had relocated to Mexico and their relatives refused to reveal their location. *Id.*

In *State v. Hobson*, 61 Wn. App. 330, 336, 810 P.2d 70 (1991), the court observed that whether the State meets its obligation imposed by the confrontation clause to make a good faith effort is determined by the particular facts of each case.

The facts here comply with the confrontation clause requirements and the requirements of ER 804. T.E. was available for trial for over two years before the trial finally commenced. Moreover, the State had flown her to Yakima for an interview and to be present for a prior trial setting. The State objected to the last two continuances of trial

and alerted the court and defense counsel that T.E. would be moving to attend school in another state, which would result in great expense to the State and inconvenience to T.E. if she had to return for trial.

Here, the videotaped deposition testimony was taken before the court and the defense had the full opportunity to develop her testimony through cross-examination. The State made a good faith effort to secure her attendance. But for the repeated delays sought by the defense, T.E. would have testified in person.

A violation of a defendant's rights under the confrontation clause does not require reversal if the error is harmless. *State v. Moses*, 129 Wn. App. 718, 732, 119 P.3d 906 (2005). A confrontation clause violation is considered harmless if the untainted evidence is so overwhelming that it necessarily leads to a finding of guilt. *State v. Koslowski*, 166 Wn.2d 409, 431, 209 P.3d 479 (2009). Hence, any error here is harmless.

*Testimony of a Common Scheme or Plan.* Mr. Ehart contends that the court abused its discretion by admitting the testimony of the rapes of T.E. as a part of a common scheme or plan that included the fondling of B.E.(1) and B.E.(2). In contrast, the State points to the factual similarities between the circumstances of abuse described by T.E. and those described by B.E.(1) and B.E.(2).

A trial court may exclude relevant evidence if the danger of unfair prejudice substantially outweighs its probative value under ER 403. *State v. Sexsmith*, 138 Wn. App. 497, 505-06, 157 P.3d 901 (2007). ER 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith."

In reviewing a challenge to the admission of ER 404(b) evidence, this court considers de novo whether the trial court correctly interpreted the rule and, if so, whether the trial court abused its discretion in admitting the evidence. *State v. Fisher*, 165 Wn.2d 727, 745, 202 P.3d 937 (2009). Before admitting ER 404(b) evidence, the trial court must determine, on the record, (1) that the prior misconduct occurred by a preponderance of the evidence, (2) that there is a lawful purpose for admitting the evidence, (3) whether the evidence is relevant to prove any of the charged elements, and (4) that the probative value outweighs the prejudicial effect. *State v. Gresham*, 173 Wn.2d 405, 421, 269 P.3d 207 (2012) (quoting *State v. Vy Thang*, 145 Wn.2d 630, 642, 41 P.3d 1159 (2002)).

A failure to weigh the evidence is harmless error if the record is sufficient for the reviewing court to determine that the trial court considered the relative weight of probative value and prejudice. *State v. Carleton*, 82 Wn. App. 680, 686, 919 P.2d 128 (1996). Also, any error in the admission of prior misconduct is harmless unless the

reviewing court finds that the outcome of the trial court would have been different had the error not occurred. *State v. Jackson*, 102 Wn.2d 689, 695, 689 P.2d 76 (1984).

Evidence of prior bad acts may be admissible to show the existence of a common scheme or plan. *State v. DeVincentis*, 150 Wn.2d 11, 19, 74 P.3d 119 (2003); *State v. Lough*, 125 Wn.2d 847, 852, 889 P.2d 487 (1995). Under this rule, two types of circumstances may allow the admission of such evidence: (1) when the prior bad act is causally related to the current charge, or (2) the prior acts evidence a single plan that is used repeatedly to carry out separate, but highly similar, crimes. *DeVincentis*, 150 Wn.2d at 19. The second analysis is at issue here. The degree of similarity between the conduct comprising the current charge and the prior bad act must be substantial. *Id*. at 20.

Here, the court found that the purpose of the ER 404(b) evidence was "very similar" and was admissible as common scheme or plan. RP at 50-51. Likewise, the record is sufficient for a reviewing court to determine that the evidence was properly admitted, and would still have been admitted, even in the absence of the trial court's full balancing of ER 404(b) and ER 403.

Mr. Ehart argues that any plan evidenced by the acts against T.E. involved grooming her by showing her pornography, fondling her, and escalating to the act of intercourse and mutual masturbation. He asserts that this plan does not appear similar to

11

Mr. Ehart's fondling of B.E.(1) and B.E.(2). Mr. Ehart did not show them pornography and he did not give T.E. gifts, even though he did give gifts to B.E.(1) and B.E.(2).

The State points out that the court concluded that the cases were related and the evidence constituted a common scheme, plan, or design. The State argues that the circumstances were substantially similar. B.E.(1) described that Mr. Ehart, after locking the door, would show her pictures of bathing suits on the computer, telling her they would look good on her. T.E. testified that Mr. Ehart would show her pictures of pornography on the computer while abusing her. T.E. testified that Mr. Ehart would peek at her while she was showering. Mr. Ehart watched B.E.(1) and B.E.(2) take a shower and washed B.E.(1) between the legs. Mr. Ehart took T.E. under a bridge to abuse her and purchased bras to wear in front of her. Mr. Ehart suggested to B.E.(2) that he buy a thong for her. He also took her to a bridge and placed his hands on either side of her.

These are sufficient to show a common scheme or plan. And even if we presume there was error, the outcome of the trial would not have been different had the error not occurred.

## STATEMENT OF ADDITIONAL GROUNDS FOR REVIEW

Mr. Ehart contends that Judge Gavin treated him with unfair prejudice. To support his claim, Mr. Ehart refers to criminal cases in 1999 and 2008, which apparently were

12

also before Judge Gavin. Mr. Ehart complains about the "unproven" testimony given by

A.E. and about having to defend two cases at once. He also maintains that he would have

been acquitted in the 2008 case but for A.E.'s false testimony. Mr. Ehart objects to the

use of the recorded testimony of T.E. He asks us to assume that Judge Gavin was biased

merely because he heard three of Mr. Ehart's cases. Mr. Ehart also complains, without

providing any reasons, that Judge Gavin failed to declare a mistrial. Mr. Ehart does

acknowledge that some of his complaints were brought up by his attorney.

There is no RCW 4.12.040(1) motion in the record. If a party complies with the

statutory requirements, prejudice is established and the judge is divested of authority to

proceed further into the merits of the case. *State v. Hawkins*, 164 Wn. App. 705, 712-13,

265 P.3d 185 (2011) (quoting *State v. Cockrell*, 102 Wn.2d 561, 565, 689 P.2d 32

(1984)). "We presume that a judge acts without bias or prejudice." *In re Pers. Restraint

of Swenson*, 158 Wn. App. 812, 818, 244 P.3d 959 (2010).

Under the appearance of fairness doctrine, evidence of a judge's actual or potential

bias must be shown before an appearance of fairness claim will succeed. *State v.

Chamberlin*, 161 Wn.2d 30, 37, 162 P.3d 389 (2007). Under the Washington Code of

Judicial Conduct, which is designed to provide guidance for judges and candidates for

judicial office, "[j]udges should disqualify themselves in a proceeding in which their

13

impartiality might reasonably be questioned." Former CJC Cannon 3(D)(1) (2002). The right to a fair hearing under the federal due process clause prohibits actual bias and the probability of unfairness. *Chamberlin*, 161 Wn.2d at 38 (quoting *Withrow v. Larkin*, 421 U.S. 35, 47, 95 S. Ct. 1456, 43 L. Ed. 2d 712 (1975)).

The matter before the trial judge was a jury trial. Here, Mr. Ehart fails to show actual bias, potential bias, or the probability of unfairness. Mr. Ehart makes no citations to the record and many of his complaints concern matters in other cases. As a pro se litigant, Mr. Ehart is held to the same standard as an attorney. *Batten v. Abrams*, 28 Wn. App. 737, 739 n.1, 626 P.2d 984 (1981).

Mr. Ehart also claims that he received ineffective assistance of counsel. To prevail on his ineffective assistance of counsel claim, Mr. Ehart must show his counsel's representation fell below an objective standard of reasonableness and prejudice from that conduct. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). If Mr. Ehart fails to establish either prong, we need not inquire further. *See State v. Hendrickson*, 129 Wn.2d 61, 78, 917 P.2d 563 (1996).

We strongly presume trial counsel provided effective assistance. *State v. Tilton*, 149 Wn.2d 775, 784, 72 P.3d 735 (2003). If defense counsel's trial conduct can be characterized as legitimate trial strategy or tactics, it cannot provide a basis for a claim of

ineffective assistance of counsel. *State v. Aho*, 137 Wn.2d 736, 745-46, 975 P.2d 512 (1999).

We hold a pro se litigant to the same standard as an attorney. *Batten*, 28 Wn. App. at 739 n.1. An appellant's brief must contain "argument in support of the issues presented for review, together with citations to legal authority and references to relevant parts of the record." RAP 10.3(a)(6). And "[p]assing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration." *Holland v. City of Tacoma*, 90 Wn. App. 533, 538, 954 P.2d 290 (1998).

Mr. Ehart contends that he received ineffective assistance of counsel. Specifically, he asserts trial counsel was deficient because he failed to provide Mr. Ehart with 24 sets of records. He also maintains that his attorney instructed him to lie but there is no indication whether or not Mr. Ehart did lie or, if he did, what effect this had on his trial. Mr. Ehart also contends that his third attorney did not attempt to get 3 sets of statements admitted. He maintains that these statements proved that the alleged victim lied.

Mr. Ehart fails to establish either prong of the *Strickland* test.

No. 30577-5-III
*State v. Ehart*

We affirm the convictions for first and second degree child molestation and communication for immoral purposes.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Kulik, J.

WE CONCUR:

_____
Korsmo, C.J.

_____
Siddoway, J.

16