UNITED STATES of America, Appellant,

v.

**Huei Mei WANG, also known as Amy Wang, Appellee.**

No. 91–3193.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 12, 1992.

Decided May 20, 1992.

Mary C. Lexa, Asst. U.S. Atty., Des Moines, Iowa, argued (Linda R. Reade, Asst. U.S. Atty., on brief), for appellant.

Don C. Nickerson, Des Moines, Iowa, argued, for appellee.

Before MAGILL, Circuit Judge, HEANEY, Senior Circuit Judge, and LARSON,* Senior District Judge.

HEANEY, Senior Circuit Judge.

The United States appeals the district court's grant of a new trial. We affirm.

## BACKGROUND

Beginning in August 1986, Huei Mei Wang, a/k/a Amy Wang, owned and operated a restaurant in Burlington, Iowa. To solicit workers for her establishment, Wang periodically advertised in a Chicago Chinese-language newspaper offering to transport workers to Burlington and provide them with room and board once there in addition to wages. Mexican nationals responded to her advertisements, and

---

* The Honorable Earl R. Larson, United States Senior District Judge for the District of Minne-  sota, sitting by designation.

Wang occasionally traveled to Chicago to transport them to Burlington. Once they were working, Wang housed the Mexican nationals in a residence next to the restaurant.

On May 30, 1990, the INS arrested five illegal aliens in Burlington, Iowa. Each of the aliens worked at Wang's restaurant. The government then filed a criminal complaint against Wang and her ex-husband, charging them with conspiracy to harbor illegal aliens in violation of 18 U.S.C. § 371. When government agents went to the restaurant to serve the complaint, however, a sign informed them that the restaurant was closed until Wang returned from vacation. The government therefore moved (with success) to dismiss its complaint.

In February 1991, the INS learned that the restaurant had reopened. The government filed another conspiracy complaint against Wang and her ex-husband. When the government served the complaint, it discovered and arrested three more illegal aliens working at the restaurant. A magistrate judge ordered the detention of the three aliens and granted the government's motion to take their depositions for testimonial purposes prior to their deportations pursuant to Fed.R.Crim.Pro. 15. Both Wang and her ex-husband and their attorneys attended the depositions.

A grand jury subsequently returned an indictment against Amy Wang, charging her with six counts of harboring illegal aliens in violation of 8 U.S.C. § 1324(a)(1)(C), but not conspiracy as originally alleged in the complaints. The government dismissed its complaint against her ex-husband and did not seek his indictment. Prior to her trial, the government dismissed the second count against Wang, and during the trial, it dismissed count four.

Prior to trial, Wang filed a motion in limine seeking to prevent the admission of the videotaped depositions. Wang contended that because she had not viewed Rule 16 discovery materials prior to the depositions, she could not adequately confront and cross-examine the witnesses. The district court denied Wang's motion. The trial commenced on June 3, 1991. Each of the four counts charged by the government correlated to a particular illegal alien. Two of these Mexican nationals testified live during the trial, while the testimony of the remaining two individuals was presented via the videotaped depositions. When the government began presenting the videotaped depositions, Wang reiterated her objection, which the district court overruled. On June 5, 1991, the jury found Wang guilty of counts one (live witness), three (live witness), and six (videotaped witness), and not guilty of count five (videotaped witness).

Following her conviction, Wang moved for a new trial, again contending that lack of full discovery prevented her from cross-examining the adverse witnesses and additionally arguing that because the videotaped witnesses were not present at the trial, she could not question them regarding an element of the charged offense of harboring illegal aliens. The district court granted her motion, ruling that Wang's Sixth Amendment right to cross-examination had been violated because at the time of the videotaped depositions, she was charged with conspiracy, whereas she was ultimately tried for the substantive offense of harboring illegal aliens. Because these respective crimes involve different elements and because the witnesses in question were not present at Wang's trial for harboring illegal aliens, the district court found that introducing their videotaped depositions denied Wang the right of effective cross-examination guaranteed by the Sixth Amendment's confrontation clause.[1] The government appeals this decision.

---

1. The government contends that during the trial Wang did not object to the admission of the videotaped testimony on the same ground that the district court relied upon to order a new trial, and therefore Wang's objection was neither timely nor specific enough to warrant the district court's action. The government cites two cases in support of its proposition, both of which are inapplicable here. In *United States v. McDaniel*, 773 F.2d 242 (8th Cir.1985), and *United States v. Helmel*, 769 F.2d 1306 (8th Cir. 1985), this court "held that statements admitted into evidence in violation of the confrontation clause do not constitute grounds for reversal

## DISCUSSION

### A. Standard of Review

■ Citing *United States v. Van Kirk*, 935 F.2d 932, 935 (8th Cir.1991), and *United States v. Condelee*, 915 F.2d 1206, 1209 (8th Cir.1990), the government contends that because the district court's ruling involved a question of law and not the sufficiency of the evidence, we should review the ruling *de novo*. In making this argument, the government fails to note that *Van Kirk* turned on the appropriateness of instructing the jury on an entrapment defense, while *Condelee* reviewed a motion to suppress, not a motion for a new trial. In other words, neither of these cases involved an evidentiary issue similar to the one here. Indeed, in the similar situation where a district court granted a new trial because the defendant could not effectively cross-examine a witness, the government has urged us to review the district court's actions under an abuse of discretion standard. *See United States v. Wayne*, 903 F.2d 1188, 1191 (8th Cir.1990); *see also Vassar v. Solem*, 763 F.2d 975, 978–79 (8th Cir.1985) (reviewing for an abuse of discretion the district court's denial of a motion for new trial where defendant claimed that he was illegally prevented from testifying on his own behalf).

We thus revert to the standard rule that "[d]eciding a motion for a new trial is a matter committed to the sound discretion of the trial court." *O'Dell v. Hercules, Inc.*, 904 F.2d 1194, 1200 (8th Cir.1990) (citation omitted). As this court has explained,

> The trial court is in the best position to determine whether the alleged error affected the substantial rights of any party sufficient to warrant a new trial. Therefore, the trial court's decision deserves

considerable deference. A trial court must determine whether an evidentiary ruling was so prejudicial as to require a new trial which would be likely to produce a different result. We may only find a trial court's determination of the admissibility of evidence was prejudicial where there has been a clear abuse of discretion.

*Id.* (citations omitted); *see also Allied Chemical Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36, 101 S.Ct. 188, 191, 66 L.Ed.2d 193 (1980) ("The authority to grant a new trial, moreover, is confided almost entirely to the exercise of discretion on the part of the trial court.").

### B. New Trial

■ While the Sixth Amendment does not guarantee "cross-examination that is effective in whatever way, and to whatever extent the defense might wish," *Delaware v. Fensterer*, 474 U.S. 15, 20, 106 S.Ct. 292, 294, 88 L.Ed.2d 15 (1985) (citation omitted), "a violation of the confrontation clause does" occur when "the limitation on the cross-examination could reasonably be expected to have a substantial effect on the jury's decision." *United States v. Farnsworth*, 729 F.2d 1158, 1162 (8th Cir.1984) (citation omitted). The district court found such an effect here.

To appreciate this ruling, the elements of conspiracy must be contrasted with those for harboring an illegal alien. To prove conspiracy under 18 U.S.C. § 371, the government must show that (1) two parties entered into an agreement or reached an understanding to commit a crime, and (2) at least one of the parties overtly acted in furtherance of the agreement. The elements of harboring an illegal alien under 8 U.S.C. § 1324(a)(1)(C) are far more specific. The government must prove that the defendant (1) harbored (2) an illegal alien (3) with

unless a timely and specific objection is made at trial." *McDaniel*, 773 F.2d at 245 (citing *Helmel*, 769 F.2d at 1316). Our court continued, explaining that "[t]he rationale supporting this rule is 'that had the defendant "alerted the Government and the district court to the fact that no proof of unavailability had been presented by the Government, that deficiency could have been cured." ' " *McDaniel*, 773 F.2d at 245 (quoting *Helmel*, 769 F.2d at 1317 (quoting *Unit-*

*ed States v. Gibbs*, 739 F.2d 838, 847 (3d Cir. 1984) (en banc) *cert. denied* 469 U.S. 1106, 105 S.Ct. 779, 83 L.Ed.2d 774 (1985))). Here, even if Wang had specifically objected to the videotaped testimony on Sixth Amendment confrontation grounds either before or during the trial, the district court could not have cured the defect. Thus, neither *McDaniel* nor *Helmel* applies here.

reckless disregard for alien's unlawful presence in the United States. That these crimes are different cannot be disputed.

At the time of the videotaped depositions, Wang, in the words of the district court,

> thought that the heart of the Government's accusation was an agreement between [Wang] and [her ex-husband]. [She] was not in any way on notice that the Government would be relying on a theory of reckless disregard.... [Nor was she] on notice that [s]he had to worry about any actual harboring, because the Government wasn't required to prove any actual harboring when what [s]he thought [s]he was facing then was a conspiracy, [ ] the heart of which is an agreement.

As the district court recognized, "I think it's inescapable that we must conclude that in some fashion [Wang's] cross-examination of the witnesses would have been different if [she] had known what the specific charges were." Indeed, during the videotaped depositions, Wang did not confront the witnesses regarding the harboring and reckless disregard elements. Thus, the introduction of the depositions, which were taken when Wang was unaware of the ultimate charge for which she would be tried, squarely violated Wang's Sixth Amendment rights "to be informed of the nature and cause of the accusation [and] to be confronted with the witness[es] against [her]." U.S. Const. amend VI.[2] *See United States v. Feldman,* 761 F.2d 380, 383–84, 389–90 (7th Cir.1985) (deposition testimony improperly admitted when at time of deposition no criminal charges were pending against the defendant).

■ Anticipating this conclusion, the government contends that a new trial should be limited to count six (videotaped testimony) and not include counts one and three (live witnesses). The district court expressly addressed the government's concern, explaining that the videotaped testimony, "along with all the other evidence,

went to the other charges as well. And so I think the convictions on all three counts are tainted." The interconnectedness of the evidence was reflected in the jury instructions, which did not direct the jury to segregate the evidence in the manner suggested by the government.

In sum, under an abuse of discretion standard, we find no error with the district court's conclusion that admitting the videotaped testimony violated Wang's Sixth Amendment rights and that she suffered prejudice because of this violation. Accordingly, we affirm the district court's order for a new trial, during which the videotaped testimony cannot be admitted.

---

**2.** Comments by the district court further expose the harm caused by Wang's inability to confront the deposed witnesses with the charge of harboring illegal aliens in mind. According to the district court, "the evidence that the defendant recklessly disregarded the fact that the alien[s] w[ere] in the United States, in violation of law,

was thin. I believe the evidence that the defendant gave shelter in order to substantially help the aliens remain in the United States illegally was thin." These comments convince us that the admission of the depositions was more than harmless error.