[No. 40098-3-I. Division One. September 7, 1999.]

THE STATE OF WASHINGTON, *Appellant*, v. SADHU SINGH RAI, *Respondent*.

*David S. McEachran, Prosecuting Attorney*, and *Laura D. Hayes, Deputy*, for appellant.

*Robert Martin Hill* of *Morgan Hill, P.C.*, for respondent.

GROSSE, J. — Once a jury returns a special verdict, finding that a defendant was armed with a deadly weapon during the commission of a crime, it is up to the sentencing court to determine whether the defendant's sentence must be lengthened by the deadly weapon enhancement provisions of RCW 9.94A.125 or the firearm enhancement provisions of RCW 9.94A.310. But where, as here, the uncontested evidence before the court shows that the defendant was armed with a firearm, the court errs as a matter of law by failing to enhance the defendant's sentence under RCW 9.94A.310. We affirm Rai's conviction, but vacate and remand his sentence.

## FACTS

Sadhu Singh Rai owned and operated a motel in Bellingham. At some point he began to experience financial difficulties. On the day in question, the power company disconnected the electricity due to Rai's failure to pay his bill. Several of the motel's patrons, including Mr. and Mrs. Griffing, were angry and demanded refunds. As the patrons congregated outside the motel office, Rai obtained a shotgun, opened a sliding glass door on the building's second floor, and fired the weapon.

Rai testified that he could not remember most of the evening, but maintained that he fired the weapon into the air, not at a particular person. But Mrs. Griffing testified that she saw Rai pointing the weapon "down towards" Mr. Griffing, so she yelled, "He's got a shotgun." and soon thereaf-

ter heard Rai fire a shot as her husband scrambled for cover. Rai fired the weapon as many as five times.

Mr. Griffing testified that at the time he saw the weapon it was being held in a vertical position, but he did not see the weapon at the time it was discharged. He further testified that upon hearing the shot he was "scared of getting killed and scared for the family getting killed[.]" As he took cover behind his van, he stated that he tried "to rationalize what's going on[.]" He testified that he thought, "He's just trying to scare me off. This can't be really happening. He's shooting up in the air."

The SWAT team arrived and attempted to enter the building. As they breached the door they threw in a "flashing-sound diversion device." Officer Snider testified that he saw "a tan-skinned male wearing underwear" standing approximately five feet away and pointing a shotgun at him. As he attempted to withdraw, the man fired the shotgun. The shotgun's projectiles ripped Officer Snider's shirt and put a hole in his reinforced elbow pad, but he was not injured. Approximately 15 minutes later, after a fire from the motel office began to engulf the entire building, Rai emerged with a shotgun in his hands. Officer Snider identified him as the same man who had fired the weapon. Rai threw the shotgun down and the officers placed him under arrest.

The State charged Rai with two counts of assault in the first degree of Mr. Griffing and Officer Snider. The charges included allegations that Rai "was armed with a deadly weapon, to wit: a shotgun, for the purposes of [RCW] 9.94A.125, the deadly weapon enhancement." The jury found Rai guilty on both counts of the lesser offense of second degree assault and, by special verdict, found that Rai was armed with a deadly weapon. The court enhanced Rai's sentence for each assault under the deadly weapons enhancement provision of RCW 9.94A.125. The State ap-

peals Rai's sentence enhancement, and Rai cross-appeals his convictions.

## DISCUSSION

I. The sentencing court erred as a matter of law by failing to enhance Rai's sentence under the firearm enhancement provisions of the Sentencing Reform Act of 1981.

The State asserts that the jury's special verdict, finding that Rai was armed with a deadly weapon, necessarily includes a finding that Rai was armed with a firearm. The State argues, therefore, that the court erred by sentencing Rai under the deadly weapons enhancement provision of RCW 9.94A.125 rather than the firearm enhancement provision of RCW 9.94A.310(3)(b). We agree.

In *State v. Meggyesy*,[1] the jury found, by special verdict, that Meggyesy was armed with a deadly weapon. The court enhanced his sentence under RCW 9.94A.310(3), the firearm enhancement. Meggyesy argued that the court "erred by imposing a sentence enhancement based on the fact that he was armed with a *firearm* during commission of his crime, where the State pleaded and the jury found that he was armed with a *deadly weapon*."[2] We affirmed, agreeing with the State that there is nothing in RCW 9.94A.310 requiring a specific finding regarding a firearm, and "once a finding regarding a deadly weapon is made, it is up to the sentencing court to determine the appropriate enhancement."[3] Our decision in *Meggyesy*, therefore, disposes of Rai's arguments with regard to potential due process violations. But *Meggyesy* is not entirely dispositive of the issue before us.

*Meggyesy* essentially stands for the proposition that the

---

[1] *State v. Meggyesy*, 90 Wn. App. 693, 958 P.2d 319, *review denied*, 136 Wn.2d 1028 (1998).

[2] *Id.* at 706.

[3] *Id.* at 708-09.

sentencing court's determination with regard to these two sentencing enhancements is reviewed for abuse of discretion. Here, the court clearly did not exercise its discretion, stating that it felt "constrained" to adopt Rai's contention that procedural due process required the court to place the firearm enhancement issue before the jury for a special verdict. The court's failure to make an independent determination is a failure to exercise discretion and, standing alone, demands that we reverse. But given the facts of this case, we must go further and reverse with instructions to enter the firearm enhancements because the court erred as a matter of law.

*Meggyesy* did not address whether RCW 9.94A.310(3) *requires* the sentencing court to enhance a defendant's sentence where the uncontested facts show that the defendant was armed with a firearm during the commission of a crime. The firearm enhancement of RCW 9.94A.310(3) states:

> The following additional times shall be added to the presumptive sentence for felony crimes committed after July 23, 1995, if the offender or an accomplice was armed with a firearm . . . and the offender is being sentenced for one of the crimes listed in this subsection as eligible for any firearm enhancements based on the classification of the completed felony crime.

The court shall add a three-year enhancement to the standard range sentence of a defendant who commits a class B felony while armed with a firearm.[4] Assault in the second degree is a class B felony.[5] RCW 9.94A.310(3)(e) states:

> Notwithstanding any other provision of law, any and all firearm enhancements under this section are mandatory, shall be served in total confinement, and shall run consecutively to all other sentencing provisions, including other firearm or deadly weapon enhancements, for all offenses sentenced under this chapter.

---

[4]RCW 9.94A.310(3)(b).

[5]RCW 9A.36.021(2).

The language of the statute is unambiguous; a sentencing court must add three years to the sentence of a defendant who commits the crime of assault in the second degree while armed with a firearm. Given the uncontested fact that Rai was armed with a firearm during the commission of his crimes, the court erred by not imposing sentence enhancements under the firearm enhancement provisions. Accordingly, we vacate Rai's deadly weapon enhancements and remand with instructions that the court impose firearm enhancements to Rai's sentence.

II. There was sufficient evidence to support Rai's conviction for assault in the second degree.

Rai cross-appeals, arguing that there is insufficient evidence to support his conviction for assaulting Mr. Griffing because the evidence is insufficient to show that he attempted to inflict bodily injury or that Griffing actually felt apprehension and fear. He also argues in his pro se brief that the evidence was insufficient to support his conviction for assault of Officer Snider. We disagree with both contentions. Viewing the evidence, and all reasonable inferences therefrom, in the light most favorable to the State, we find that a rational trier of fact could have found the essential elements of the crimes beyond a reasonable doubt.[6]

The definitions of assault at issue here are: (1) " 'an attempt, with unlawful force, to inflict bodily injury upon another, accompanied with the apparent present ability to give effect to the attempt if not prevented,' " and (2) " ' "putting another in apprehension of harm whether or not the actor intends to inflict or is incapable of inflicting that harm." ' "[7] Rai acknowledges that Mrs. Griffing's testimony that she saw Rai point the shotgun at Mr. Griffing seconds before Rai fired the weapon supports his conviction.[8] But he contends that it conflicts with Mr. Griffing's testimony that he saw the weapon pointed in a vertical po-

---

[6]*State v. Joy*, 121 Wn.2d 333, 338-39, 851 P.2d 654 (1993).

[7]*State v. Byrd*, 125 Wn.2d 707, 712, 887 P.2d 396 (1995) (citations omitted).

[8]Br. of Resp't/Cross-Appellant at 8.

sition, and the conflicting accounts, coupled with the lack of physical evidence, makes it impossible for a reasonable trier of fact to conclude that he intended to inflict bodily injury on Mr. Griffing.

The Griffings' testimony, however, is not in conflict. Viewing the evidence in the light most favorable to the State, it is reasonable to conclude that Mr. Griffing saw Rai with the shotgun before Mrs. Griffing saw Rai. And the fact that Rai fired a shotgun in Mr. Griffing's direction while Mr. Griffing was within range of the weapon is sufficient to support a finding that Rai intended to inflict bodily injury.[9]

Next, Rai does not contest that he intended to put Mr. Griffing in apprehension of harm or that Mr. Griffing actually felt fear of bodily injury. But he contends that Mr. Griffing's fear was "a natural reaction of anybody in the vicinity of a gunshot," and made him no more a victim of assault than anyone else "who heard the gunshot and decided to head for safe quarters."[10] In essence, Rai argues that Mr. Griffing's fear was unreasonable because he did not know whether the shotgun was pointed at him. Rai supports this argument with Mr. Griffing's testimony that he subsequently tried to rationalize the incident by concluding that Rai must have been firing in the air in an attempt to scare him off. But Rai fails to cite Mr. Griffing's testimony that, upon hearing his wife scream and hearing the shot, he stated that he feared for his life and the lives of the members of his family. And given the facts leading up to the event, we conclude that a rational trier of fact could find that his fear was reasonable.

Lastly, Rai argues that the facts of this case create "a reasonable doubt" as to whether he assaulted Officer Snider. But the facts show that Officer Snider saw a man point a shotgun at him, felt the shotgun's projectiles make contact with his arm, and had his shirt sleeve and elbow pad damaged by the shotgun's projectiles. The facts further

---

[9]*See State v. Brakes*, 1 Wn. App. 987, 990, 465 P.2d 683 (1970).

[10]Br. of Resp't/Cross-Appellant at 10-11.

314

show that Rai emerged from the building carrying a shotgun, and Officer Snider identified Rai as the individual who shot at him. Given these facts, we find the evidence sufficient to support the verdict.

For the foregoing reasons, we affirm Rai's conviction, but vacate and remand his sentence.

BAKER and BECKER, JJ., concur.